Mobilfone of Northeastern Pennsylvania, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Commonwealth Telephone Company, Intervenor.

Argued April 5, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG and MACPHAIL.

*Robert D. Mariani, Mariani and Greco,* for petitioner.

*Robert A. Christianson,* Assistant Counsel, with him *Daniel P. Delaney,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Bernard A. Ryan, Jr., Dechert, Price & Rhoads,* for intervenor.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., November 15, 1983:

Mobilfone of Northeastern Pennsylvania petitions for review of a Public Utility Commission order which dismissed its complaint against the Commonwealth Telephone Company. We affirm.[1]

Mobilfone filed a complaint against a tariff filed by Commonwealth Telephone, a competing radio-telephone business. The complaint alleged that the rates in Commonwealth Telephone's Supplement No. 60 to Tariff Telephone—Pa. P.U.C. No. 19 were non-compensatory, non-competitive, unreasonable and subsidized by all customers of Commonwealth Telephone's landline operation. The Commission allowed the tariff and, following a hearing, the Administrative Law Judge issued a decision finding the rates properly set and recommending that the complaint be dismissed. Exceptions were filed and oral argument was held.

The issue before the Commission was whether Commonwealth Telephone's rates were compensatory

---

[1] The issue of Mobilfone's standing as a competitor of Commonwealth Telephone to appeal the Commission's order was not raised and we do not now address it.

and whether Commonwealth Telephone's monopoly service ratepayers were cross-subsidizing the competitive radio-telephone service. The Commission adopted the Administrative Law Judge's decision.[2]

The question of reasonableness of rates is an administrative question for the Commission to decide and this Court's scope of review is limited.[3] *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission*, 47 Pa. Commonwealth Ct. 512, 409 A.2d 446 (1979). "[T]he establishment of a rate structure is an administrative function peculiarly within the expertise of the Commission. . . . [Q]uestions . . . concerning the reasonableness of rates . . . are factual questions for the Commission whose findings must be upheld if supported by competent evidence." *United States Steel Corp. v. Pennsylvania Public Utility Commission*, 37 Pa. Commonwealth Ct. 195, 211, 390 A.2d 849, 857 (1978) (citations omitted).

In support of its argument that Commonwealth Telephone's rates are too low, Mobilfone alleges that the Commission erred in accepting the method employed by Commonwealth Telephone to determine its costs of providing radio paging service. Mobilfone contends that Commonwealth Telephone's methodology utilizes cost factors determined wholly on the basis of its monopoly landline telephone experience. According to Mobilfone, the result is cross-subsidiza-

---

[2] The Commission did not accept the Administrative Law Judge's recommendation with respect to Commonwealth Telephone's additional tariff filing for simultaneous activation. This issue was not made subject to this appeal.

[3] Our scope of review of the Commission's order is a determination of whether constitutional rights have been violated, an error of law has been committed, or the findings or order of the Commission are not supported by substantial evidence. *Park Towne v. Pennsylvania Public Utility Commission*, 61 Pa. Commonwealth Ct. 285, 289, 433 A.2d 610, 613 (1981).

tion between Commonwealth Telephone's monopoly ratepayers and the paging service subscribers. Mobilfone argues that its own experienced costs are more representative of costs which Commonwealth Telephone might incur and thus show a need for further inquiry into Commonwealth Telephone's cost allocations. The Commission properly rejected this argument.

There is no single correct cost methodology. *Executone of Philadelphia, Inc. v. Pennsylvania Public Utility Commission*, 52 Pa. Commonwealth Ct. 74, 415 A.2d 445 (1980). The Commission has fully detailed the methodology Commonwealth Telephone used, and the evidence fully supports the Commission's approval of this methodology. Commonwealth Telephone's paging rates were established on the basis of feasibility and cost-of-service studies.[4]

---

[4] These studies were conducted by its Vice President Paul Mazza. From his experience, Mazza projected 300 paging units in service within the first several years of operation. This number was confirmed by a random sampling of prospective customers. In determining the costs of providing the new service, Mazza employed the standard methodology used in the industry. The cost of each of the various items of equipment to be used and other incidental costs in setting up that equipment were determined. In addition, appropriate depreciation expenses were fixed for each item of equipment. The company's experienced maintenance expenses for that type of equipment, as well as its administrative and tax expenses, were also determined and related to the cost of the equipment. Finally, an appropriate rate of return was developed for each item of equipment. From these components, a total annual unit cost, including a return on the investment, was found for each form of new service.

Commonwealth Telephone also compared its proposed rates with all of the paging service tariffs then on file with the Commission. The comparison revealed that the new rates were at the higher end of the range of paging rates being charged by other telephone companies and in the middle of the range of rates charged by radio common carriers like Mobilfone.

The resulting rates charged by Commonwealth Telephone are virtually identical to Mobilfone's for comparable service.[5] Under these rates, the cost-of-service studies[6] prepared by Commonwealth reveal a rate of return of 10.8% compared with a 6.5% rate of return on its landline telephone plant. This higher rate further quells any contention of cross-subsidization.

Being mindful of the Commission's discretionary power and considering our limited scope of review, we conclude that there is substantial evidence showing that the rates attacked by Mobilfone are fully cost-justified. They are almost identical to Mobilfone's own rates and in line with rates charged by other companies offering similar services.[7]

Affirmed.

## ORDER

That part of the order of the Pennsylvania Public Utility Commission entered May 17, 1982, at C-22065 dismissing the complaint of Mobilfone of Northeastern Pennsylvania, Inc., is affirmed.

------

[5] These rates are:

|  | Pages Provided by Customer | | Pages Provided by Utility | |
|  | Commonwealth | | Commonwealth | |
|  | Telephone | Mobilfone | Telephone | Mobilfone |
|---|---|---|---|---|
| Tone | $ 9.00 | $10.00 | $18.00 | $20.00 |
| Tone/voice | $11.00 | $11.00 | $22.00 | $23.00 |

[6] Commonwealth Telephone, in fact, did have 300 units in service within twelve months of operation and by the end of 1980 had over 750 pagers in service.

[7] Mobilfone also argues on appeal that Commonwealth Telephone should be required to submit its actual cost of operation since beginning its paging service to determine if its rates were reasonable and free from cross-subsidization. Further, Mobilfone asks that Commonwealth Telephone be required to maintain separate accounts for its radio paging service. We find no basis for either request.