592 A.2d 1119

**Thomas Edward SCHROYER, et ux.**

v.

**Frances C. McNEAL.**

**No. 162, Sept. Term, 1990.**

Court of Appeals of Maryland.

July 24, 1991.

Gorman E. Getty, III (Glenn J. Robinette, Hidey, Coyle, Getty & Monteleone, on brief), Cumberland, for petitioners.

William M. Rudd (Anderson, Rudd & Donahue, on brief), Cumberland, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The genesis of this case was a slip and fall accident which occurred on the parking lot of the Grantsville Holiday Inn in Garrett County, Maryland. Frances C. McNeal (McNeal),

the respondent, sustained a broken ankle in the accident and, as a result, sued Thomas Edward Schroyer and his wife, Patricia A. Schroyer [1] (the Schroyers), the petitioners, in the Circuit Court for Garrett County, alleging both that they negligently maintained the parking lot and negligently failed to warn her of its condition. The jury having returned a verdict in favor of McNeal for $50,000.00 and their motion for judgment notwithstanding the verdict or for new trial having been denied, the Schroyers appealed to the Court of Special Appeals, which affirmed. *Schroyer v. McNeal*, 84 Md.App. 649, 581 A.2d 472 (1990). In its opinion, the intermediate appellate court directly addressed the Schroyers's primary negligence and McNeal's contributory negligence; however, although it was properly presented, that court did not specifically address whether McNeal had assumed the risk of her injury.[2] We issued the writ of certiorari at the request of the Schroyers and now reverse. We hold that, as a matter of law, McNeal assumed the risk of the injury. We need not and, therefore,

---

1. In addition to the Schroyers, the owners and operators of the Grantsville Holiday Inn under a franchise from Holiday Inn, Inc., the respondent also sued Pasco Development Corporation, (Pasco), the company that constructed the Grantsville Holiday Inn, the sole stockholders of which are the Schroyers, and Holiday Inn, Inc. Motions for judgment were granted in favor of Pasco, and Holiday Inn, Inc. at the close of the respondent's case in chief. The propriety of those rulings is not before us, as it was not before the Court of Special Appeals.

2. In her brief, McNeal argues that the assumed risk argument is not preserved. She relies on the failure of the Schroyers to request such an instruction or to except when the court did not give one. The argument misses the point, however. Since the issue is the propriety of the trial court's denial of motions for judgment, premised on the issue of assumption of the risk, the critical inquiry is whether the Schroyers complied with Maryland Rule 2-519. Section (a) of the rule provides, in pertinent part:

> A party may move for judgment on any or all issues in an action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence. The moving party shall state with particularity all reasons why the motion should be granted....

The Schroyers complied with the rule. Accordingly, the assumed risk issue was properly presented.

do not, reach the other issues presented.[3]

The events surrounding McNeal's accident and her subsequent complaint against the Schroyers are largely not in dispute. McNeal arrived at the Grantsville Holiday Inn at approximately 5:30 p.m. on January 9, 1985. At that time, although approximately four inches of sleet and ice had accumulated, she observed that the area in front of, and surrounding, the main lobby area, where hotel guests registered, had been shoveled and, thus, was reasonably clear of ice and snow. She also noticed, however, that the rest of the parking lot had neither been shoveled nor otherwise cleared of the ice and snow. McNeal parked her car in front of the hotel while she registered. While registering, she requested a room closest to an exit due to her need to "cart" boxes and paperwork back and forth to her room. She was assigned a room close to the west side entrance, which was at the far end of the hall, away from the lobby. This was done notwithstanding the hotel's policy of not assigning such rooms during inclement weather. Also, contrary to policy, McNeal was not advised that she should not use the west entrance and, of course, no warnings to that effect were posted near that entrance.

Having registered, McNeal drove her car from the main entrance to within ten to fifteen feet of the west side entrance. She parked on packed ice and snow. Moreover, as she got out of her car, she noticed that the sidewalk near

---

3. The Petition for Certiorari presented a single multi-faceted question: Whether the intermediate appellate court erred in affirming the circuit court's denials of the appellants's motion for judgment and motion for judgment notwithstanding the verdict or a new trial, given that:

    A. The finding that the appellants were not free from primary negligence as a matter of law, was inconsistent with the case law;

    B. The finding that the appellee was not contributorily negligent as a matter of law, was inconsistent with the case law; and

    C. The intermediate appellate court's refusal to address the issue of assumption of risk ignores the distinction in Maryland between this doctrine and that of contributory negligence.

Our order granting certiorari encompassed within it all aspects of the question.

the entrance had not been shoveled and, furthermore, that the area was slippery. Nevertheless, she removed her cat from the car and crossed the ice and snow carefully, and without mishap. On the return trip to her car to retrieve the remainder of her belongings, she slipped and fell, sustaining the injury previously described.

Concerning her knowledge of the parking lot's condition, McNeal testified that, in the immediate vicinity of where she parked her car, the "packed ice and snow" was slippery and that, as a result, she entered the building "carefully." She denied, however, that it was unreasonable for her, under the circumstances, to try to traverse the parking lot; she "didn't think it was that slippery. I didn't slip the first time in."

The Schroyers moved for judgment, both at the end of McNeal's case in chief and at the conclusion of all the evidence. That McNeal had assumed the risk of her injury was one of the grounds advanced in support of those motions. Both motions were denied. The jury having returned its verdict in favor of McNeal, the Schroyers filed a motion for judgment notwithstanding the verdict or a new trial. As in the case of the motions for judgment, they argued, *inter alia,* that respondent was barred from recovery by the doctrine of assumption of the risk. The trial court denied that motion.

As indicated earlier, the Court of Special Appeals did not directly address whether McNeal assumed the risk of injury. Although it recognized that she "knew of the dangerous condition" and, presumably, acted voluntarily when she started to cross the ice and snow covered parking lot and sidewalk, the court perceived the question to be "whether she acted reasonably under the circumstances." 84 Md. App. at 657, 581 A.2d at 476. It concluded that whether McNeal was contributorily negligent, *i.e.,* acted reasonably in light of the known risk, was a question appropriately left to the jury for decision. 84 Md.App. at 658, 581 A.2d at 476.

Assumption of the risk and contributory negligence are closely related and often overlapping defenses. *Sacks v. Pleasant,* 253 Md. 40, 46, 251 A.2d 858, 862–63 (1969); *Honolulu Ltd. v. Cain,* 244 Md. 590, 599–600, 224 A.2d 433, 438 (1966); *Burke v. Williams,* 244 Md. 154, 157, 223 A.2d 187, 189 (1966); *Baltimore County v. State, Use of Keenan,* 232 Md. 350, 359, 193 A.2d 30, 35–36 (1962); *McManamon v. High's Dairy Corp.,* 230 Md. 370, 372, 187 A.2d 318, 319 (1963); *Evans v. Johns Hopkins Univ.,* 224 Md. 234, 239, 167 A.2d 591, 594 (1961); *Warner v. Markoe,* 171 Md. 351, 359, 189 A. 260, 264 (1937); *Casper v. Chas F. Smith & Son,* 71 Md.App. 445, 472, 526 A.2d 87, 99–100 (1987); Restatement (Second) of Torts § 496A, comments c 4 and d (1965); W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 68 at 481–82 (5th ed. 1984) [hereinafter *Prosser and Keeton* ]. They may arise from the same facts and, in a given case, a decision as to one may necessarily include the other. *Keenan,* 232 Md. at 361, 193 A.2d at 37. See *Bull Steamship Lines v. Fisher,* 196 Md. 519, 77 A.2d 142 (1950), in which an instruction was upheld which did not use the term "assumption of the risk," an issue clearly generated, but which discussed the liability issue in such a way as to enable the jury, in the context of contributory negligence, to decide whether the plaintiff assumed the risk. *See also Velte v. Nichols,* 211 Md. 353, 356–57, 127 A.2d 544, 546 (1956) (mounting ladder without checking its stability estops the plaintiff, who was injured when the ladder slipped on ice, to recover, either because he assumed the risk or was contributorily negligent); *Warner,* 171 Md. at 359, 189 A. at 263 (evidence of plaintiff's prior experience with driver and of his silence concerning the driver's high rate of speed was sufficient to generate a jury question as to both assumption of the risk and contributory negligence); *Evans,* 224 Md. at 238, 167 A.2d at 593 (performing experiment in a laboratory the plaintiff knew to be unsafe constituted assumption of the risk, as well as contributory negligence).

The relationship between the defenses has also been addressed in the Restatement (Second) of Torts:

The same conduct on the part of the plaintiff may ... amount to both assumption of risk and contributory negligence, and may subject him to both defenses. His conduct in accepting the risk may be unreasonable and thus negligent, because the danger is out of all proportion to the interest he is seeking to advance, as where he consents to ride with a drunken driver in an unlighted car on a dark night, or dashes into a burning building to save his hat. Likewise, even after accepting an entirely reasonable risk, he may fail to exercise reasonable care for his own protection against that risk.

§ 496A, comment d, at 562. The overlap between assumption of the risk and contributory negligence is a complete one where "the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable...." § 496A, comment c 4. When that occurs, the bar to recovery is two-pronged: 1) because the plaintiff assumed the risk of injury and 2) because the plaintiff was contributorily negligent.

There is, however, a distinction, and an important one, between the defenses of assumption of the risk and contributory negligence. That distinction was stated in *Warner, supra,* thusly:

The distinction between contributory negligence and voluntary assumption of the risk is often difficult to draw in concrete cases, and under the law of this state usually without importance, but it may be well to keep it in mind. Contributory negligence, of course, means negligence which contributes to cause a particular accident which occurs, while assumption of risk of accident means voluntary incurring that of an accident which may not occur, and which the person assuming the risk may be careful to avoid after starting. Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery because it is a previous abandonment of the right to complain if an accident occurs.

171 Md. at 359-60, 189 A. at 264. The distinction is no less clearly made by reference to the rationale underlying the

doctrine of assumption of the risk. We explicated that rationale in *Gibson v. Beaver*, 245 Md. 418, 421, 226 A.2d 273, 275 (1967) (quoting W. Prosser, *Handbook of the Law of Torts* § 55 at 303 (2nd ed. 1955)):

> "The defense of assumption of risk rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk. Such consent may be found: * * * by implication from the conduct of the parties. When the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk, and to relieve the defendant of responsibility. Such implied assumption of risk requires knowledge and appreciation of the risk, and a voluntary choice to encounter it."

*See also* Restatement (Second) of Torts § 496A, comment d, at 562 and § 496C, at 569–574.[4] Assumption of the risk, then, "implies an intentional exposure to a known danger which may or may not be true of contributory negligence." *Burke v. Williams*, 244 Md. at 157, 223 A.2d at 189.

Whether they overlap or not, the critical distinction between contributory negligence and assumption of the risk is that, in the latter, by virtue of the plaintiff's voluntary actions, any duty the defendant owed the plaintiff to act reasonably for the plaintiff's safety is superseded by the plaintiff's willingness to take a chance. Consequently, unlike the case of contributory negligence, to establish assumption of the risk, negligence is not an issue—proof of

---

**4.** Section 496C, "Implied Assumption of Risk," provides:
(1) Except as stated in Subsection (2), a plaintiff who fully understands a risk of harm to himself or his things caused by the defendant's conduct or by the condition of the defendant's land or chattels, and who nevertheless voluntarily chooses to enter or remain, or to permit his things to enter or remain within the area of that risk, under circumstances that manifest his willingness to accept it, is not entitled to recover for harm within that risk.
(2) The rule stated in Subsection (1) does not apply in any situation in which an express agreement to accept the risk would be invalid as contrary to public policy.

negligence is not required. The plaintiff need only be aware of the risk, which he or she then voluntarily undertakes. Restatement (Second) of Torts, § 496A, comment d, at 562; *Prosser and Keeton* § 68 at 485–86; *Keenan*, 232 Md. at 360, 193 A.2d at 36; *Bull Steamship Lines v. Fisher*, 196 Md. at 524–25, 77 A.2d at 146.

It is, in short, the willingness of the plaintiff to take an informed chance that distinguishes assumption of the risk from contributory negligence. Thus, just as the facts of a given case may warrant the same result on either theory, the facts in another may warrant conflicting results. In other words, "either may constitute a defense, with or without the other." *Evans*, 224 Md. at 239, 167 A.2d at 594. A plaintiff who proceeds reasonably, and with caution, after voluntarily accepting a risk, not unreasonable in itself, may not be guilty of contributory negligence, but may have assumed the risk. *See Pinehurst Co. v. Phelps*, 163 Md. 68, 72, 160 A. 736, 737 (1932) ("A risk, while obvious, may not be so imminently dangerous that a prudent man would necessarily avoid it, yet if it shall be freely encountered it will in general be held to be so far assumed that no recovery for consequent injury is possible."). That plaintiff may be barred from recovery on the ground of assumption of the risk, while he or she would recover were the defense theory contributory negligence.

■ The test of whether the plaintiff knows of, and appreciates, the risk involved in a particular situation is an objective one, *Gibson v. Beaver*, 245 Md. at 421, 226 A.2d at 275, and ordinarily is a question to be resolved by the jury. *Id.; Kahlenberg v. Goldstein*, 290 Md. 477, 494–95, 431 A.2d 76, 86 (1981). Thus, "the doctrine of assumption of risk will not be applied unless the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff." (Emphasis in original) *Kasten Constr. Co. v. Evans*, 260 Md. 536, 544, 273 A.2d 90, 94 (1971). On the other hand, when it is clear that a person of normal intelligence in the position of the plaintiff must have understood

the danger, the issue is for the court. *Gibson v. Beaver*, 245 Md. at 421, 226 A.2d at 275 (quoting W. Prosser, *Handbook of the Law of Torts* § 55 at 310 (2nd ed.)). *See also Evans v. Johns Hopkins Univ.*, 224 Md. 234, 167 A.2d 591 (1961). In *Gibson*, the obvious danger identified was "the possible physical effects on a man [of the plaintiff's] age of the effort to lift ... or drag [a heavy fuel hose] through the snow." 245 Md. at 422, 226 A.2d at 275–76. The danger of slipping on ice was identified in Prosser as one of the "risks which any one of adult age must be taken to appreciate."

Although the definition of assumption of the risk is well settled in Maryland, as is its difference from contributory negligence, nevertheless, application of the defense—determining when and how to apply it—is yet rather difficult. This is so because, it has been suggested, the term "has been used by the courts in at least four different senses [5] and the distinctions seldom have been made clear." Restatement (Second) of Torts § 496A, comment c, at 561. That this is so is perhaps best demonstrated by the case *sub judice*.

The Court of Special Appeals, as we have seen, rejected the Schroyers's argument that McNeal was contributorily negligent as a matter of law. It did so even though the record reflected that the respondent knew, when she pro-

---

5. They are:
   (1) where the plaintiff expressly consents "to relieve the defendant of an obligation to exercise due care for the plaintiff's protection, and agrees to take his chances as to injury from a known or possible risk;"
   (2) when the plaintiff voluntarily enters into a relation with the defendant which the plaintiff knows involves a risk and, thus, by implication, relieves the defendant of responsibility and agrees to take his or her own chances;
   (3) where the plaintiff, aware of a risk created by the negligence of the defendant, proceeds or continues voluntarily to encounter that risk; and
   (4) when the plaintiff's undertaking of a known risk is itself unreasonable, *i.e.* is contributory negligence.
   Restatement (Second) of Torts § 496A, comment c, at 561.

ceeded to cross, that the parking lot and sidewalk were covered with ice and snow, which she also knew were slippery. The court determined that the respondent knew of the dangerous condition of the parking lot and sidewalk. In addressing whether McNeal was contributorily negligent as a matter of law, it perceived the dispositive issue to be the reasonableness with which she acted under the circumstances. It relied on several cases for the conclusion it reached: *Suitland Manor Owners Association, Inc. v. Cadle,* 257 Md. 230, 262 A.2d 529 (1970); *Sacks v. Pleasant,* 253 Md. 40, 251 A.2d 858 (1969); *Craig v. Greenbelt Consumer Services,* 244 Md. 95, 222 A.2d 836 (1966); and *McManamon v. High's Dairy Products Corp.,* 230 Md. 370, 187 A.2d 318 (1963).

In *McManamon,* a pregnant woman was found to be contributorily negligent as a matter of law when, with knowledge of the condition of the floor in front of the refrigerator in a convenience store, she chose to walk on it. We affirmed, explaining:

> Her own version of the happening reveals an awareness of the dangers of walking on the damp floor in her condition. There were two clerks in the store if she had desired to call them for service. *Yet she chose to walk on the treacherous surface in order to wait on herself and, in so doing, became the author of her own misfortune.* In such case she cannot charge another for her damages, and the trial judge did not err in directing a verdict for the store owner.... Compare *Sanders v. Williams,* 209 Md. 149, 152 [120 A.2d 397 (1956)]: "... one measure of contributory negligence is the need, in a given situation, to anticipate danger. Presence or absence of reasonable foresight is an essential part of the concept. One is charged with notice of what a reasonably and ordinarily prudent person would have foreseen and so must foresee what common experience tells may, in all likelihood, occur and to anticipate and guard against what

usually happens." (Some citations omitted, emphasis supplied.)

230 Md. at 372, 187 A.2d at 318–19.

To like effect is *Craig.* There, the plaintiff walked into a pile of sawdust, which she knew was slippery and, as a result, slipped and fell, injuring herself. Holding that the plaintiff had been contributorily negligent, we affirmed the lower court's grant of a directed verdict[6] in favor of the defendant. We stated:

> "Plaintiff testified that she saw the sawdust in the aisle and that she knew it to be slippery, yet she, without hesitating to plan her course, intentionally walked into the sawdust when she had a reasonable alternative of walking on the section of the aisle which was clear. She failed to exercise the care of a reasonably prudent person under the circumstances of this case...." "[A] party cannot walk upon an obstruction which has been made by the fault of another and avail himself of it, if he did not himself use common and ordinary caution." *Sutton v. Baltimore,* 214 Md. 581, 584, 136 A.2d 383 [1957]. (Some citations omitted.)

244 Md. at 97–98, 222 A.2d at 837–38.

*Suitland Manor* was cited, by way of contrast, for the implication it contained that, where a plaintiff has no alternative, safe route, he or she may not be held contributorily negligent. In that case, the plaintiff slipped and fell on a floor after she had seen the janitor mopping it. We distinguished those facts from the *Craig* facts by pointing out that, in *Craig,* the plaintiff, who had the choice of an unsafe route and a safe one, chose the unsafe route. *Suitland Manor,* 257 Md. at 232, 262 A.2d at 531.

In *Sacks v. Pleasant,* we refused to hold that a plaintiff, who used a toilet seat which she knew to be defective, was contributorily negligent or had assumed the risk. Citing

---

**6.** Effective July 1, 1984, the motion for judgment replaced the motion for directed verdict. *See* Maryland Rule 2-519.

Restatement of Torts § 473 (1934),[7] we said that, where a plaintiff may only exercise his or her rights or privileges by exposing him or herself to a risk of bodily harm, a plaintiff who nevertheless attempts to exercise his or her rights is not contributorily negligent unless, in so doing, he or she acts unreasonably.

Only in *Sacks* was the decision even arguably based on the concept of assumption of the risk[8]. Nevertheless, under the facts of all three cases, that theory would have barred recovery just as certainly as did contributory negligence. In fact, in *Sacks* we not only recognized that contributory negligence and assumption of the risk could rest upon the same facts, citing *Wiggins v. State*, 232 Md. 228, 192 A.2d 515 (1963); *Evans v. Johns Hopkins Univ.*, 224 Md. 234, 167 A.2d 591 (1961), but also that, under the facts of that case, whichever theory was applied produced the identical result. Review of the facts in both *McManamon* and *Craig* reveals that those cases could easily have been decided on the basis that the plaintiffs in those cases, by proceeding in the face of a known risk, an act which was itself unreasonable, assumed the risk of their injuries. Significantly, in each case, the knowledge that the plaintiff had and the voluntariness with which the plaintiff acted was important to our analysis. Thus, in each case, we implicitly recognized what was explicitly stated in *Bull Steamship Lines v. Fisher*, 196 Md. at 528–29, 77 A.2d at 147–48, that, when they overlap, a discussion of contributory negligence may necessarily include assumption of the risk. *See also Keenan*, 232 Md. at 361, 193 A.2d at 36–37, citing *Meistrich*

---

**7.** Section 473 of the Restatement of Torts provides:

> If the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he knowingly exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless the risk is unreasonable.

Restatement (Second) of Torts § 473 is identical, except that it does not use the word "knowingly."

**8.** The term was mentioned in *McManamon*, but only by way of suggesting a comparison between the analysis in that case and that applied by the cases discussing assumption of the risk.

*v. Casino Arena Attractions, Inc.,* 31 N.J. 44, 155 A.2d 90 (1959) and W. Prosser, *Handbook of the Law of Torts* § 55 at 305 (2nd ed.) (only in the case of an express agreement does the plaintiff's assumption of the risk contain an element not covered by the defense of contributory negligence). *See also Prosser and Keeton* § 68 at 493.

[4] While, ordinarily, application of either defense will produce the same result, that is not always the case. Especially is that so in the instant case. The record reflects, and the Court of Special Appeals held, a matter not in dispute on this appeal, that McNeal was fully aware of the dangerous condition of the premises. She knew that the area was ice and snow covered and that the ice and snow were slippery. Nevertheless, she parked in the area and, notwithstanding, according to her testimony, that she proceeded carefully, she took a chance and walked over the ice and snow covered parking lot and sidewalk because she did not think it was "that" slippery.

It is clear, on this record, that McNeal took an informed chance. Fully aware of the danger posed by an ice and snow covered parking lot and sidewalk, she voluntarily chose to park and traverse it, *albeit* carefully, for her own purposes, *i.e.* her convenience in unloading her belongings. Assuming that the decision to park on the ice and snow covered parking lot and to cross it and the sidewalk was not, itself, contributory negligence, McNeal's testimony as to how she proceeded may well have generated a jury question as to the reasonableness of her actions. On the other hand, it cannot be gainsaid that she intentionally exposed herself to a known risk. With full knowledge that the parking lot and sidewalk were ice and snow covered and aware that the ice and snow were slippery, McNeal voluntarily chose to park on the parking lot and to walk across it and the sidewalk, thus indicating her willingness to accept the risk and relieving the Schroyers of responsibility for her safety. Consequently, while the issue of her contributory negligence may well have been for the jury, the opposite is true with respect to her assumption of the risk. We hold,

as a matter of law, that McNeal assumed the risk of her own injuries.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR GARRETT COUNTY. RESPONDENT TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.