666  A.2d  876

**Keen Tykenko MARTIN, et al.**

v.

**ADM PARTNERSHIP, et al.**

**No. 1911, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Nov. 1, 1995.

Bruce M. Bender (Rena W. Heneghan and Van Grack, Axelson, Williamowsky & Jacobs, P.C., on the brief), Rockville, MD, for appellants.

Edward J. Brown (McCarthy, Wilson & Ethridge, on the brief), Rockville, MD, for appellees.

Before BISHOP, ALPERT[*] and GARRITY (John J., Retired, specially assigned), JJ.

ALPERT, Judge.

In *Schroyer v. McNeal,* 323 Md. 275, 592 A.2d 1119 (1991), the ice and snow of the winter season combined to contribute to Ms. McNeal slipping and injuring herself while attempting to traverse a snow covered path into her hotel. Ms. McNeal could have used a second path that had been cleared of the seasonal fallout but opted to take her chances with the covered path because it was closer to her room. Appellee relies significantly on the *Schroyer* decision in its brief, but the similarity between the *Schroyer* case and the case at bar is limited to the fact of an injury caused by a slippery sidewalk, and nothing more.

Appellants, Keen Tykenko Martin ("Martin") and American Motorists Insurance Co., filed a two-count complaint against appellees[1] on February 21, 1992, seeking compensation for injuries sustained by Martin when she slipped and fell on an icy walkway while making a delivery to appellees' property at 98 Church Street in Rockville, Maryland. Trial was held before a jury in the Circuit Court for Montgomery County on October 3–4, 1994. At the close of appellants' case, appellees moved for judgment, arguing that Martin assumed the risk of her alleged injuries as a matter of law. Appellees' motion for judgment was granted on October 4, 1994. This appeal followed, wherein appellants make the following arguments:

I.  The trial court erred in granting appellees' motion for judgment when the facts and inferences offered to support their affirmative defense were controverted.

---

[*] Alpert, J., participated in the argument and decision in this case but retired from the court prior to the filing of the opinion, and was recalled pursuant to Md. Constitution art. IV, § 3A.

1.  Appellees include ADM Partnership and three general partners of that partnership, Scott L. MacDonald, Joe C. Adams, and Franklin Duane.

II. The trial court erred in granting the motion for judgment in favor of the appellees when the evidence demonstrated that they failed to meet the burden of proof of their affirmative defense.

We hold that the trial court erred in granting appellees' motion for judgment, and we remand the case to the Circuit Court for Montgomery County for a new trial.

## Facts and Proceedings

On March 8, 1989, appellant Martin, while employed as a delivery person for Ideal Reprographics, was assigned to deliver blueprints to an occupant of 98 Church Street in Rockville, Maryland, a property owned by appellees. Martin pulled her pickup truck into the parking lot directly in front of the walkway leading up to the building. She noted that there was ice and unplowed snow on the parking lot and entrance walkway. Martin testified that she felt it was safe to enter the building despite the condition of the parking lot and walkway because she saw other cars parked in the lot, footprints on the ground, and people in the building. Furthermore, she testified that she believed she was required to make the delivery for her employer.

Martin exited her truck and went to the passenger side to retrieve the blueprints to be delivered. As she proceeded toward the walkway to the building, Martin slipped and nearly fell to the ground, catching herself from falling by grabbing onto her truck. She then walked into the building and delivered the blueprints. Upon leaving the building, Martin slipped and fell on the walkway, sustaining injuries to her lower back. She filed suit in the Circuit Court for Montgomery County against the owners of the premises for negligence in failing to keep their property safe, and this appeal ultimately followed.

## Discussion

Appellants argue that the trial court erred in granting appellees' motion for judgment for two reasons: first, because the facts and inferences offered to support the affirmative

defense of assumption of risk were controverted, and second, because appellees failed to meet the burden of proof required for the defense of assumption of risk. Appellees disagree, contending that the evidence conclusively established that Martin voluntarily and knowingly encountered a dangerous condition which caused her injury, and therefore, she assumed the risk as a matter of law. We agree with appellants.

In reviewing a trial court's grant of a motion for judgment in a jury trial, this Court must conduct the same analysis as the trial court, viewing all evidence in the light most favorable to the non-moving party. *See Cavacos v. Sarwar,* 313 Md. 248, 250, 545 A.2d 46 (1988); Md.Rule 2–519(b). Thus, we may affirm the grant of the motion for judgment only if, when considering evidence most favorable to appellants' claim, we conclude that there was insufficient evidence to create a jury question. *Cavacos,* 313 Md. at 250, 545 A.2d 46.

In order to establish that a plaintiff assumed the risk of injury as a matter of law, "the defendant must show that the plaintiff (1) had knowledge of the risk of danger, (2) appreciated that risk and (3) voluntarily exposed [herself] to it." *Liscombe v. Potomac Edison Co.,* 495 A.2d 838, 303 Md. 619, 630 (1985) (quoting from *Stancill v. Potomac Elec. Power Co.,* 744 F.2d 861, 866 (D.C.Cir.1984)). Proof of negligence on the part of the plaintiff is not required, nor is it necessary to show the reasonableness of a plaintiff's willingness to encounter a known risk. *Schroyer v. McNeal,* 323 Md. 275, 283, 592 A.2d 1119 (1991). Ordinarily, the test of whether a plaintiff is aware of and appreciates the risk involved in a situation is an objective one, to be resolved by a jury. *Id.* "On the other hand, when it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger, the issue is for the court." *Id.* at 283–84, 592 A.2d 1119.

### Knowledge of the Danger

Martin testified at her trial that when she pulled into the parking lot of 98 Church Street, she saw "snow and stuff

still there." She explained that it had been a couple of days since the snow had fallen, and when she drove up to the front door of the building she saw footprints in the snow and people in the building working. Therefore, Martin explained, she decided to attempt to deliver the blueprints. On cross-examination, Martin admitted that prior to exiting her truck, she had seen that the walkways leading up to 98 Church Street were icy:

> [DEFENDANTS' ATTORNEY] And while you were still in the truck, before you ever got out of the truck, you saw that the walkways, by your description, were icy, correct?
>
> [MARTIN] Correct.

Martin further explained that when she first exited the truck, she went around to the passenger side to get the blueprints and she slipped on the ice, grabbing onto the truck to prevent herself from falling.

Martin's admission that she had seen that the walkways were icy and that she had slipped on the ice prior to the slip-and-fall that formed the basis for this claim, both support the trial court's finding that Martin was aware of the risk. Thus, the first prong of the test to determine assumption of risk is satisfied.

### Appreciation of the Risk

Appellants argue that there is no evidence that Martin appreciated the risk because she testified that, based on the presence of footprints in the snow and people in the building, she thought it was safe to traverse the property. Appellants cite no legal authority for the principle that if a person believed it safe to encounter a known risk, a person could not be held to have assumed that risk. In fact, *Schroyer* makes clear that "[a] plaintiff who proceeds reasonably, and with caution, after voluntarily accepting a risk, not unreasonable in itself, may not be guilty of contributory negligence, but may have assumed the risk." *Schroyer*, 323 Md. at 283, 592 A.2d 1119 citing *Pinehurst Co. v. Phelps*, 163 Md. 68, 72, 160 A. 736 (1932). Thus, that Martin may have thought it was

safe to traverse the icy walkway has no bearing on whether she had an appreciation of the risk.

The Court of Appeals noted in *Schroyer* that "[t]he danger of slipping on ice was identified in Prosser as one of the 'risks which any one of adult age must be taken to appreciate.'" *Schroyer,* 323 Md. at 284, 592 A.2d 1119 (quoting W. Prosser, *Handbook of the Law of Torts* § 55 at 310 (2d ed.)). The trial court did not err, therefore, in finding that Martin, a person of adult age, appreciated the risk of slipping on the ice. Thus, the second prong of the test for assumption of risk is satisfied.

### Voluntariness

Appellants would distinguish *Schroyer* from the instant case by arguing that Martin, unlike McNeal, the plaintiff in *Schroyer,* had no alternative means of entering the building, and was not proceeding for her own convenience. Therefore, they argue that Martin did not voluntarily walk across the icy walkway. We agree to this extent: the question of voluntariness should have been submitted to the jury.

In *Schroyer,* the plaintiff who slipped and fell on an icy sidewalk chose to use an unplowed side entrance to the building, rather than the plowed front entrance, so she could more easily unload boxes and paperwork to her hotel room. *Schroyer,* 323 Md. at 278, 592 A.2d 1119. The Court of Appeals held in *Schroyer* that McNeal's actions were voluntary because she was not acting for her employer, but rather, was acting for her own benefit. The Court, therefore, did not need to examine the significance, if any, that having access to a safe alternative entrance had on the finding of assumption of risk.

> [McNeal] knew that the area was ice and snow covered and that the ice and snow were slippery. Nevertheless, she parked in the area and, notwithstanding, according to her testimony, that she proceeded carefully, she took a chance and walked over the ice and snow covered parking lot and sidewalk because she did not think it was 'that' slippery.

It is clear, on this record, that McNeal took an informed chance. Fully aware of the danger posed by an ice and snow covered parking lot and sidewalk, she voluntarily chose to park and traverse it, *albeit* carefully, for her own purposes, *i.e.* her convenience in unloading her belongings.... With full knowledge that the parking lot and sidewalk were ice and snow covered and aware that the ice and snow were slippery, McNeal voluntarily chose to park on the parking lot and to walk across it and the sidewalk, thus indicating her willingness to accept the risk and relieving the Schroyers of responsibility for her safety. Consequently, while the issue of her contributory negligence may well have been for the jury, the opposite is true with respect to her assumption of the risk. We hold, as a matter of law, that McNeal assumed the risk of her own injuries.

*Schroyer,* 323 Md. at 288–89, 592 A.2d 1119.

Appellants' convincing argument is that Martin, unlike McNeal, did not voluntarily encounter the risk because she was not acting for her own convenience; rather, at the time of her injury, she was on a mission for her employer. The case at bar can also be distinguished from *Burke v. Williams,* 244 Md. 154, 223 A.2d 187 (1966), where the Court of Appeals held that an act does not become involuntary simply because the actor was working for an employer at the time the action was taken. In *Burke,* the plaintiff was injured on the job while walking across slippery planks in order to deliver sinks. The Court of Appeals held that the plaintiff assumed the risk as a matter of law, explaining that:

> [t]he rule is that when a plaintiff in a personal injury action becomes aware of a previously created risk and voluntarily chooses to put up with the situation—where as here a workman confronted with a slippery walkway nevertheless chose to use it—then his willingness to take a chance is implied and he would be barred from recovering for a risk he chose to assume.

*Id.* at 157–58, 223 A.2d 187 (citing W. Prosser, *Torts* (1964 ed.) § 67; Restatement (Second), *Torts* § 496A–G).

■ The question is, at what point does carrying out an employment responsibility become a voluntary act. In keeping with the language in *Burke*, we believe that an act becomes voluntary when the employee is given a clear and reasonable choice either to act or not act, and then chooses willingly to act. In *Burke*, the plaintiff did not have to traverse the slippery planks in order to fulfill his job requirements. The Court of Appeals went so far as to say that,

> there is no evidence that the owners of the house, or anyone else, ever demanded that the appellant use the walkway against his will. Nor is there any evidence that his job would have been in jeopardy had he left the sink tops on the construction site instead of taking them into the house.

*Burke*, 244 Md. at 158, 223 A.2d 187. In order to complete the job assignment successfully, the plaintiff in *Burke* had only to deliver sink tops to the construction site. By taking it upon himself to move the sinks into the house through the carport, the plaintiff chose to undertake a voluntary activity that subjected him to an assumption of risk defense.

The facts of *Burke* can be distinguished from the case at bar in that Martin could not have left the blueprints on the ground outside the building. To complete her assignment successfully, she needed to make delivery to a particular office inside the building; and, in order to do that, she had to traverse an icy path leading to and from the building's sole entrance. A decision not to walk over the icy ground leading to the building would have resulted in Martin's failure to complete her task. Hence, it is arguable that Martin was deprived of a clear and reasonable choice, and therefore it becomes a question of fact whether she chose to act, or acted voluntarily.

In the instant case, appellants argue that they presented evidence which, when viewed in the light most favorable to them, supports an inference that Martin did not voluntarily assume the risk of her injuries. Martin testified that she believed that if she failed to deliver the blueprints to the occupants of 98 Church Street, she would suffer some negative repercussion from her employer. Appellees point out, howev-

er, that Martin further testified that no one in her company had explicitly told her that she would lose her job if she did not make the delivery.

Specifically, Martin testified as follows:

[PLAINTIFFS' COUNSEL] Okay. Could you have gotten back into your car and driven away and not made your delivery that day?

[MARTIN] No.

Q   I am sorry?

A   No, I could not.

Q   And why is that?

A   Because I could have caused them losing the contract with the company they already had. I could have lost my job.

Q   Did anyone ever tell you that you would lose your job if you didn't make a delivery?

\*     \*     \*     \*     \*     \*

A   No, not that I can recall or not that I can remember.

On cross-examination, Martin responded to further questions about her actions in delivering the blueprints:

[DEFENSE COUNSEL] Okay. Ma'am, you indicated you had some concern, but the truth is nobody ever told you you would be fired if you hadn't brought the blueprints there, isn't that correct?

[MARTIN] No, not that I know of.

Q   Well, that is what I am asking you. Nobody ever told you that you were going to be fired if you didn't—[take] those blueprints in, correct?

A   Correct.

Q   And nobody told you these blueprints had to get there or somebody is going to lose a contract or whether this business was going to go bankrupt?

A   I am not for sure.

Q   Okay. But you can't tell this jury under oath that anybody ever told you that that day.

A    Well no, I never—no.

■■■    Although an employee's fear or concern over the effect on his continued employment or future employment opportunities of failing to carry out his or her mission must be reasonably based, we do not accept appellees' contention that a worker must show that she was expressly given an ultimatum to perform or be fired in order to avoid a finding of assumption of risk. That asks too much of the worker. Such a standard would be virtually impossible for a plaintiff to meet.

The Appellate Court of Illinois had the opportunity to address the modern employee's dilemma of whether to perform risky tasks or suffer employment repercussions in *Varilek v. Mitchell Eng'g Co.*, 200 Ill.App.3d 649, 146 Ill.Dec. 402, 558 N.E.2d 365 (Ill.1990). In *Varilek*, the Court held that an injured worker did not assume the risk because he acted solely in accordance with the job demands and any refusal to perform likely would have either jeopardized his job or caused him to fall out of favor with his employer:

> Likewise, we are mindful that in the competitiveness and pragmatism of the real world being fired is not the only sanction or detriment that workers suffer if they refuse to do their jobs. There are many other sanctions and detriments that are not expressed or immediately imposed that workers suffer if they choose not to do their jobs. It follows that an injured worker does not have to put in evidence that he would have been fired if he had not done his job in order to show that his decision ... was not voluntary under the doctrine of assumption of risk.

*Id.* at 413, 558 N.E.2d at 376. It would be unreasonable to require that Martin show exactly what would have happened to her had she refused to make her delivery. She expressed the belief that she could possibly have lost her job because, if the delivery was not made, her employer might have lost the account. That evidence was not contradicted; her concern was not shown to be unreasonable as a matter of law.

We are not holding that a risk can never be voluntarily assumed in an employment context. There was evidence here, however, that Martin may not have had any clear and reasonable choice if she wanted to remain in good favor with her employer.

There is little doubt that the view expressed here is consistent with the view of a growing number of jurisdictions. In *Cremeans v. Willmar Henderson Mfg. Co.*, 57 Ohio St.3d 145, 566 N.E.2d 1203 (1991), a case decided by the Supreme Court of Ohio, the Court relied on several cases to support its finding that the injured employee did not act voluntarily and could not have assumed the risk of being hurt on the job.

> Many courts in recent years have moved away from the strict common law application of the doctrine of assumption of risk in the employment context by realizing that an employee does not voluntarily or unreasonably assume the risks of employment simply by accepting employment or by performing required job duties.

*Cremeans*, 566 N.E.2d at 1206–1207. The Ohio Court cites *Johnson v. Clark Equip. Co.*, 274 Or. 403, 547 P.2d 132, 140–141 (1976), for the proposition that:

> Working conditions and related circumstances have a strong influence on the decision to encounter a job-related danger. Fear of dismissal and the prospect of finding new employment could make a decision to encounter a known risk reasonable.

*Cremeans*, 566 N.E.2d at 1207. In addition, the Supreme Court of Ohio looked at *Suter v. San Angelo Foundry & Mach. Co.*, 81 N.J. 150, 406 A.2d 140 (1979) and *Brown v. Quick Mix Co.*, 75 Wash.2d 833, 454 P.2d 205 (1969), for those courts' pronouncements respectively that,

> Employee has no meaningful choice but to encounter risks in his employment and, thus, cannot voluntarily assume the risk of injury.

*Cremeans*, 566 N.E.2d at 1207.

> It could never be said as a matter of law that a workman whose job requires him to expose himself to a danger, voluntarily and unreasonably encounters the same.

*Brown,* 454 P.2d at 208. (quoted in *Cremeans,* 566 N.E.2d at 1207.)

Here, as in *Burke,* there is no evidence that the owners of the premises at 98 Church Street, or anyone else for that matter, ever demanded that Martin use the walkways against her will. Unlike *Burke,* however, Martin did only that which was required of her by her employer, and nothing more. Moreover, the case at bar, unlike *Burke,* generated sufficient evidence at trial that a jury should have been allowed to answer the question of whether plaintiff would have suffered negative repercussions at her job had she not delivered the blueprints. When viewing the evidence in the light most favorable to appellants, one might reasonably infer that Martin, with no clear and reasonable alternative, was compelled to use the walkway in order to complete the delivery for her employer.

We hold that the trial judge erred in finding that appellants did not present evidence which would generate an issue of fact for the jury concerning the voluntariness of Martin's actions.

JUDGMENT OF THE CIRCUIT COURT OF MONTGOMERY COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEES TO PAY THE COSTS.