700 A.2d 838

**Janet L. NEAL**

**v.**

**PRINCE GEORGE'S COUNTY, Maryland, et al.**

**No. 127, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Sept. 26, 1997.

Stephen Rothandler (J.E. Wingfield & Associates, P.C., on the brief), Washington, DC, for appellant.

Patricia L. Kane (Thomas J. Davis and Associates, Rockville, Barbara L. Holtz, Acting County Atty., Sean D. Wallace, Deputy County Atty. and John A. Bielec, Associate County Atty., Upper Marlboro, on the brief), for appellees.

Argued before MOYLAN, HOLLANDER and KENNEY, JJ.

HOLLANDER, Judge.

In this case, we must analyze the concept of voluntariness in deciding whether a recipient of social service benefits assumed the risk of falling when she walked on an icy sidewalk in order to keep a scheduled appointment with the Maryland Department of Social Services ("DSS"), rather than risk adverse consequences from missing the appointment. Janet L. Neal, appellant, brought a negligence action against Prince George's County and Palmer Park Condominium Association, appellees, for injuries she sustained when she fell on January 24, 1994 on an ice-covered sidewalk leading to the DSS office in Landover. At the time, appellant had an appointment with DSS to obtain medical assistance benefits for her young son; the accident occurred as appellant was approaching the only entrance to the DSS office.

Appellees moved for summary judgment, claiming that appellant assumed the risk when she walked on the icy sidewalk. Appellant denied that her action was voluntary. Following a hearing, the Circuit Court for Prince George's County concluded that appellant assumed the risk of the occurrence, and granted appellees' motion. Thereafter, appellant timely noted her appeal. She presents a single question for our review, which we have rephrased:

Did the court err in granting summary judgment in favor of the defendants when there was a dispute of material fact as to whether plaintiff voluntarily encountered a known risk?

We conclude that the circuit court erred in granting summary judgment. In our view, it is for the jury to determine whether appellant voluntarily assumed the risk of falling on the ice. Accordingly, we shall reverse and remand for further proceedings.

### Factual Background

Appellant had an appointment with DSS on January 24, 1994 at 9:45 a.m. at its office in Landover, for the purpose of obtaining medical assistance benefits for her son, Derek, who was then four years old. Appellant arrived at about 9:00 a.m., parked her car, and observed that snow was on the ground and that the parking lot was icy. There was only one sidewalk leading to the entrance to the DSS office, which was also covered with ice. Nevertheless, the DSS office was open for business and so appellant, who was wearing boots, proceeded across the parking lot and up to the sidewalk, from which she entered the office without incident.

After waiting approximately 20 minutes for her interview, appellant was informed that she needed identification to register Derek for medical assistance. Consequently, she was "told" to return home to retrieve her identification. Neal exited the building and proceeded on the icy sidewalk. After taking about ten or fifteen steps, she slipped on the ice but did not fall. Appellant then drove to her home, which was located a few minutes away, obtained the necessary identification, drove back to DSS, and parked in the identical parking space that she had previously used. As there was only one path available to appellant to reach the DSS entrance, she again traversed the icy path. Appellant took about three or four steps and slipped at approximately the same location where she had slipped earlier. Unfortunately, this time appellant fell and fractured her left tibia and fibula.

At her deposition, appellant said of her decision to cross the ice another time: "I looked and I was scared to walk there, but I couldn't find another place to walk." She added:

I was cautious when I went back because I knew I had already slipped. So I was trying to watch where I was

going. I was trying to find a place that I didn't have to go back the same way.

And since I didn't, *I just took my chances,* went on across. And once I got right smack in the middle, I fell backwards, slid backwards.

(Emphasis added.)

Appellant also explained at her deposition that she thought her appointment was mandatory; while she did not "want to come [to DSS] that day," because of the weather, she thought she "had to be there." When asked whether she could have rescheduled the appointment, she responded:

I'm not sure. Because usually when you do that, if you have an appointment there and you don't keep it, they'll close your case or—sometimes you got to wait like 30 days to get another appointment.

Appellant also explained that she had no health insurance for her son, and needed medical assistance in order to obtain a physical examination and vaccinations for him that were required for school and child care. Appellant also believed that her public assistance benefits would be terminated if she did not take her child to the doctor.

Thereafter, appellees moved for summary judgment, asserting the affirmative defense of assumption of the risk. At the hearing, the circuit court concluded: "I think that she took a chance, that she in her own words 'took my chances.' I think that there was assumption of the risk, and the motion for summary judgment is granted."

## Standard of Review

"In deciding a motion for summary judgment ... the trial court must decide whether there is any genuine dispute as to material facts and, if not, whether either party is entitled to judgment as a matter of law." *Bagwell v. Peninsula Regional Medical Ctr.,* 106 Md.App. 470, 488, 665 A.2d 297 (1995), *cert. denied,* 341 Md. 172, 669 A.2d 1360 (1996); *see* Md. Rule 2–501; *Davis v. DiPino,* 337 Md. 642, 648, 655 A.2d 401 (1995); *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737–38, 625

A.2d 1005 (1993); *Tennant v. Shoppers Food Warehouse*, 115 Md.App. 381, 386, 693 A.2d 370 (1997). In our review of the trial court's decision granting a motion for summary judgment, we must undertake the same analysis as the trial court. *cf. Martin v. ADM Partnership*, 106 Md.App. 652, 657, 666 A.2d 876 (1995) (construing motions for judgment), *cert. granted*, 341 Md. 719, 672 A.2d 659 (1996). This requires us to resolve all factual disputes in Neal's favor, and to construe all inferences reasonably drawn from those facts in her favor as well. *Tennant*, 115 Md.App. at 387, 693 A.2d 370; *Bagwell*, 106 Md.App. at 488, 665 A.2d 297. If the facts generate a jury question, then summary judgment is not warranted. *Martin*, 106 Md.App. at 657, 666 A.2d 876. In the absence of a dispute as to material fact, we must also consider whether the trial court's decision was legally correct. *Beatty*, 330 Md. at 737, 625 A.2d 1005; *Tennant*, 115 Md.App. at 386, 693 A.2d 370; *Bagwell*, 106 Md.App. at 488, 665 A.2d 297.

To defeat a motion for summary judgment, the non-moving party must present admissible evidence to show the existence of a dispute of material fact. *Tennant*, 115 Md.App. at 386, 693 A.2d 370; *Bagwell*, 106 Md.App. at 488, 665 A.2d 297; *Commercial Union Ins. Co. v. Porter Hayden*, 97 Md. App. 442, 451, 630 A.2d 261 (1993), *rev'd on other grounds*, 339 Md. 150, 661 A.2d 691 (1995). Mere formal denials or general allegations of disputed facts are insufficient to defeat a motion for summary judgment, however. *Tennant*, 115 Md.App. at 386–87, 693 A.2d 370; *Bagwell*, 106 Md.App. at 488, 665 A.2d 297; *Seaboard Sur. Co. v. Richard F. Kline, Inc.*, 91 Md.App. 236, 243, 603 A.2d 1357 (1992). Moreover, the evidence presented by the non-moving party to defeat the motion must be sufficiently detailed and precise so as to enable the trial court to assess the materiality of the proffered facts. *Beatty*, 330 Md. at 738, 625 A.2d 1005; *Tennant*, 115 Md.App. at 387, 693 A.2d 370; *Bagwell*, 106 Md.App. at 489, 665 A.2d 297. Only a material fact, *i.e.*, "a fact that will alter the outcome of the case depending upon how the factfinder resolves the dispute over it," *Bagwell*, 106 Md.App. at 489, 665 A.2d 297, will be considered for purposes of the motion. *See King v. Bankerd*,

303 Md. 98, 111, 492 A.2d 608 (1985); *Tennant*, 115 Md.App. at 387, 693 A.2d 370.

## Discussion

The elements of the affirmative defense of assumption of the risk are well settled. The defendant must show that: (1) the plaintiff had knowledge of the risk of danger; (2) the plaintiff appreciated the nature of the risk of danger; and (3) the plaintiff voluntarily encountered the risk of danger. *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 630, 495 A.2d 838 (1985); *Martin*, 106 Md.App. at 657, 666 A.2d 876; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 68, at 487 (5th ed.1984); *see also Janelsins v. Button*, 102 Md.App. 30, 41, 648 A.2d 1039 (1994) (stating that assumption of risk involves "cognizance of a danger and volition in encountering it"). Ordinarily, it is for the jury to determine whether a plaintiff knew of the danger and appreciated the risk. *Martin*, 106 Md.App. at 657, 666 A.2d 876; *see also* Keeton et al., *supra*, § 68, at 487. "On the other hand, when it is clear that a person of normal intelligence in the position of the plaintiff must have understood the danger, the issue [concerning knowledge and appreciation of the danger] is for the court." *Schroyer v. McNeal*, 323 Md. 275, 283–84, 592 A.2d 1119 (1991).

The parties do not dispute that appellant was aware of the risk and appreciated the danger presented by the icy sidewalk. The only element at issue concerns voluntariness in encountering the danger. The trial court reasoned that appellant "took a chance, that she in her own words 'took my chances.'" Therefore, the court below concluded that Neal's action was barred by the doctrine of assumption of risk. We see it differently.

Relying upon *Martin*, 106 Md.App. 652, 666 A.2d 876, and *Rountree v. Lerner Development Co.*, 52 Md.App. 281, 447

A.2d 902 (1982),[1] appellant contends that she did not voluntarily negotiate the icy path. Appellant argues that "voluntariness" in assumption of the risk cases does not mean simply that appellant elected to walk on the icy sidewalk. Rather, she contends that even when an act is the product of a rational decision, it is not voluntary if the decision is prompted by a reasonable fear of adverse consequences flowing from a decision not to encounter the risk, or if the risk is encountered in order to pursue a legal right or entitlement.

In this regard, Neal claims that she was not merely acting for her own convenience or benefit. To the contrary, she argues that her actions were for the benefit of her young son, in order to obtain medical care for him. Moreover, she avers that she owed a duty to her son to provide him with health care, and had a legal entitlement to obtain medical assistance benefits for him. She also argues that her subjective beliefs, if reasonable, are relevant in regard to determining voluntariness; she avers that she reasonably believed that failure to keep her scheduled appointment would result in the closure of her case or a delay in her receipt of benefits. Moreover, she points out that there was only one entrance to the DSS office, and thus she lacked a safe, alternative route. Therefore, in appellant's view, she generated a jury question as to whether she voluntarily encountered a known risk when she walked across the ice-covered path.

In *Martin*, 106 Md.App. at 656, 666 A.2d 876, a woman employed as a delivery person was assigned on the day in question to deliver blueprints to her employer's client. When she arrived at the customer's building, the employee observed that the parking lot and walkway were covered by ice and unplowed snow. The employee "felt it was safe to enter the building despite the condition of the parking lot and walkway because she saw other cars parked in the lot, footprints on the

---

1. Appellant also relies upon *Craig v. Greenbelt Consumer Services, Inc.*, 244 Md. 95, 222 A.2d 836 (1966), and *Suitland Manor Owner's Ass'n v. Cadle*, 257 Md. 230, 262 A.2d 529 (1970). Those cases, however, concern contributory negligence, and thus do not illuminate the issue here.

ground, and people in the building." *Id.* As the employee proceeded toward the walkway, she slipped but avoided falling by grabbing onto her truck. Martin then continued along the walkway and into the building without incident, and delivered the blueprints. As she was leaving the building, however, Martin slipped and fell on the walkway, injuring her back. At trial, she testified to her belief that she was required to complete the delivery for her employer, and her fear that her employment would be jeopardized if she did not complete the task.

Although Martin explained that she feared possible adverse action from her employer if she failed to complete the delivery, the circuit court entered judgment in favor of the defendants, based on the doctrine of assumption of risk. We reversed, holding that although Martin knew of the danger and appreciated the risk, whether she voluntarily encountered the risk was a question for the jury to resolve. We reasoned that because Martin was not acting for her own convenience, but was on a mission for her employer, a decision not to encounter the risk would have meant that she failed to complete an assigned task. Thus, we said "it is arguable that Martin was deprived of a clear and reasonable choice, and therefore it becomes a question of fact whether she chose to act, or acted voluntarily." *Id.* at 661, 666 A.2d 876.

*Rountree,* 52 Md.App. 281, 447 A.2d 902, is also instructive. There, the plaintiff fell and injured herself on ice-covered steps as she exited her apartment. Although she knew of the icy conditions and appreciated the danger of proceeding on the steps, she was required to go to her office and had no safe alternative to exit her building. *Id.* at 283, 447 A.2d 902. At the close of the plaintiff's case, the circuit court entered judgment as a matter of law in favor of the defendants. We reversed, concluding that "there was no evidence of any 'reasonably safe alternative open' and there was, at the very least, a jury issue with respect to the 'voluntary assumption' restriction on the defense of assumption of risk." *Id.* at 286, 447 A.2d 902.

In reaching our decision in *Rountree*, we relied on Prosser, *Law of Torts* 447 (4th ed.1971). Prosser makes clear that in order for a defendant to prevail on the affirmative defense of assumption of risk, the plaintiff's choice " 'must be entirely free and voluntary.' " *Rountree*, 52 Md.App. at 284, 447 A.2d 902.

> "Even where the plaintiff does not protest, the risk is not assumed where the conduct of the defendant has left him no reasonable alternative. Where the defendant puts him to a choice of evils, there is a species of duress, which destroys all idea of freedom of election. Thus a shipper does not assume the risk of a defective car supplied him by a carrier where the only alternative to shipment in it is to let his cabbages rot in the field; and a tenant does not assume the risk of the landlord's negligence in maintaining a common passageway when it is the only exit to the street. In general, the plaintiff is not required to surrender a valuable legal right, such as the use of his own property as he sees fit, merely because the defendant's conduct has threatened him with harm if the right is exercised.... By placing him in the dilemma, the defendant has deprived him of his freedom of choice, and so cannot be heard to say that he has voluntarily assumed the risk."

*Id.* at 285–86, 447 A.2d 902 (quoting Prosser, *supra*, at 451) (emphasis in *Rountree* omitted).

As DSS is a State governmental agency that provides, among other things, medical assistance to children in need, we believe another passage from Prosser is also instructive:

> The defendant may be under a legal duty, which he is not free to refuse to perform, to exercise reasonable care for the plaintiff's safety, so that the plaintiff has a corresponding legal right to insist on that care. In such a case it is commonly said that the plaintiff does not assume the risk when he proceeds to make use of the defendant's services or facilities, notwithstanding his knowledge of the danger. This is undoubtedly true where the plaintiff acts reasonably, and *the defendant has left him with no reasonable alternative,* other than to forego the right entirely. Thus a com-

mon carrier, or other public utility, which has negligently provided a dangerously defective set of steps to its waiting room, cannot set up assumption of risk against a patron who makes use of the steps as *the only convenient means of access.* The same is true of a city maintaining a public highway or sidewalk, or *other public place which the plaintiff has a right to use,* and of premises upon which the plaintiff has a contractual right to enter.

Keeton et al., *supra,* § 68, at 492 (emphasis supplied).

Appellees counter that, based upon *Schroyer v. McNeal,* 323 Md. 275, 592 A.2d 1119, the trial court ruled correctly. In *Schroyer,* McNeal arrived at a hotel and observed that about four inches of sleet and ice had accumulated on the parking lot. Only the immediate area surrounding the main entrance had been shoveled and was reasonably clear. *Id.* at 278, 592 A.2d 1119. McNeal, who needed to carry boxes of papers from her car to her room, requested a room as close as possible to an exit. The hotel clerk assigned a room to her that was close to the west side entrance, despite the hotel's policy of not using those rooms during inclement weather. *Id.* Nor was McNeal advised that she should use only the lobby entrance. McNeal drove her car to the west entrance, where she parked on packed ice and snow. She observed that the sidewalk had not been cleared and looked slippery. *Id.* at 278–79, 592 A.2d 1119. Proceeding carefully, she successfully made one trip into the building, but slipped and fell while returning to her car.

The defendants moved for summary judgment and later sought judgment as a matter of law at the close of the plaintiff's case on theories of contributory negligence and assumption of the risk. After the circuit court denied the motions, the jury returned a verdict in favor of the plaintiff. *Id.* at 279, 592 A.2d 1119. The Court of Appeals reversed; it determined that, as a matter of law, McNeal assumed the risk of her own injuries. *Id.* at 277, 592 A.2d 1119. The Court concluded:

It is clear, on this record, that McNeal took an informed chance. Fully aware of the danger posed by an ice and snow covered parking lot and sidewalk, she voluntarily chose to park and traverse it, *albeit* carefully, for her own purposes, *i.e.* her convenience in unloading her belongings. Assuming that the decision to park on the ice and snow covered parking lot and to cross it and the sidewalk was not, itself, contributory negligence, McNeal's testimony as to how she proceeded may well have generated a jury question as to the reasonableness of her actions. On the other hand, it cannot be gainsaid that she intentionally exposed herself to a known risk. With full knowledge that the parking lot and sidewalk were ice and snow covered and aware that the ice and snow were slippery, McNeal voluntarily chose to park on the parking lot and to walk across it and the sidewalk, thus indicating her willingness to accept the risk and relieving the Schroyers of responsibility for her safety. Consequently, while the issue of her contributory negligence may well have been for the jury, the opposite is true with respect to her assumption of the risk.

*Id.* at 288, 592 A.2d 1119.

■ As we see it, *Schroyer* is distinguishable from this case. Unlike the plaintiff here, the plaintiff in *Schroyer* clearly had a safer, alternative route to her destination; she could have carried her belongings through the main entrance, which had been shoveled. In this case, however, there was only one entrance available to appellant. While *Schroyer* does not make assumption of the risk contingent upon a safe, alternative route, the lack of a safe alternative route is certainly a consideration. *See Odenton Dev. v. Lamy,* 320 Md. 33, 44, 575 A.2d 1235 (1990) (stating that store patron who fell on ice as she proceeded to her car made a voluntary choice and could have used "a safe alternative means of egress from the store"). Further, McNeal's assumption of the risk rested, at least in part, upon the fact that she was acting purely "for her own purposes." In contrast, although appellant may well have benefitted from receiving financial assistance to meet her child's health care needs, and to that extent acted for her own

purposes in going to DSS, her actions also were for the benefit of her child. Moreover, unlike in this case, there was no suggestion in *Schroyer* that the plaintiff's course of conduct was motivated by a concern about adverse consequences in failing to proceed. We also take note of appellant's deposition testimony, in which she claimed that she was instructed to go home to get her identification. If she were so instructed, she reasonably may have believed that she lacked a genuine choice in deciding whether to comply with those instructions, notwithstanding her preference to remain home.

At oral argument, appellees sought to transfer blame to appellant for trying to do what was expected of her in keeping the appointment with DSS. They argued that appellant voluntarily assumed the risk, because there was no urgency in regard to obtaining medical benefits for her son. Therefore, when appellant realized that the path was icy, appellees urged that appellant could have chosen to remain home based on the danger from the ice. Because she did not do so, appellees assert that Neal voluntarily assumed the risk. We ask, rhetorically, why appellant would have thought such a course of conduct would have been appropriate if DSS did not determine that it should close its offices to the public.

In the context of this case, the issue of a viable alternative is not limited to a particular route or path. The broader question is whether, under the circumstances attendant here, appellant reasonably believed that she had the alternative option of failing to return to the agency because of her fears about the condition of the sidewalk. Appellees' argument completely ignores the concerns that an ordinary, responsible citizen might have about canceling an appointment with a government welfare agency because of the fear of falling on the sidewalk. This concern would understandably be heightened by the fact that the agency is part of a large bureaucracy and the agency itself did not deem conditions so dangerous as to warrant closing for business. "There was evidence here ... that [the plaintiff] may not have had any clear and reasonable choice" in order to receive promptly the health

benefits for her son. *Martin,* 106 Md.App. at 664, 666 A.2d 876.

As we noted earlier, in resolving the motion for summary judgment, the trial court was obligated to resolve all factual issues in Neal's favor, and to draw all reasonable inferences from the facts in favor of appellant. Neal was in need of financial assistance to provide her son with medical care, and was attempting to keep an appointment with a governmental agency in order to pursue her right to medical assistance for him. She believed her benefits would be jeopardized or delayed if she did not keep her appointment. The agency was open for business, which may have contributed to a legitimate or understandable concern by appellant that she could not allow ice on the sidewalk to deter her from keeping her appointment. Further, Neal claimed she was directed to retrieve her identification. Looking at the facts and inferences in the light most favorable to appellant, we cannot say, as a matter of law, that appellant voluntarily assumed the risk of falling on ice. To the contrary, we can ascertain no basis upon which to remove from the province of the jury the issue of whether appellant voluntarily encountered the risk of slipping on ice. Therefore, we conclude that the court erred in granting summary judgment.

**JUDGMENT VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS. APPELLEES TO PAY COSTS.**